NOT DESIGNATED FOR PUBLICATION

No. 121,443

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

A.W., on behalf of L.Y.,
*Appellant*,

v.

L.M.Y.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed February 14, 2020. Reversed and remanded with directions.

*Marlo Hamrick* and *Lowell C. Paul*, of Kansas Legal Services, for appellant.

*Benjamin J. Fisher*, of Hutchinson, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: A.W. (Mother) filed a petition for a protection from stalking order, on behalf of her daughter, L.Y., against her ex-husband and L.Y.'s father, L.M.Y. (Father), after L.Y.—who was 5 years old at the time—made allegations of sexual abuse against Father. After an evidentiary hearing, the district court granted Mother's petition and entered a protection from stalking order against Father but stated that it would review that order in 45 days. A few days after the hearing, however, the district court communicated ex parte to one of the witnesses and requested additional information. After reviewing that additional evidence, the district court set the matter for a nonevidentiary hearing. At that second hearing, the court reversed its decision to enter the

protection from stalking order based on the information discovered as a result of its ex parte investigation. Mother filed a motion to alter or amend the district court's decision, but it was denied. On review, we find that the district court engaged in judicial misconduct and that the misconduct prejudiced Mother's substantial rights. For this reason, we reverse the decision of the district court and remand with directions to reinstate the original protection from stalking order.

FACTS

Mother and Father are the natural parents of L.Y. but are divorced and share parenting time. On January 15, 2019, Mother, on behalf of L.Y., filed a petition for a protection from stalking order against Father. In the petition, Mother alleged L.Y., who was 5 years old at the time, reported that Father sexually abused her when she was staying at his apartment in Oklahoma. Mother sought an order preventing Father from being near L.Y. so as to protect her from further sexual abuse. A temporary order to that effect was put in place the same day the petition was filed, and an evidentiary hearing was scheduled for January 25, 2019. The hearing ultimately was continued and was not held until February 14, 2019.

Although both Mother and Father testified at the hearing, they presented conflicting testimony regarding the veracity of L.Y.'s claims. Mother testified first and, after some other witnesses, presented the testimony of Jane Holzrichter, the director of the Child Advocacy Center and the Horizons forensic interviewer. Holzrichter testified that she conducted a forensic interview with L.Y. to collect information about the alleged incident(s). That interview was digitally recorded on video and used by Holzrichter to create her report. Relevant here, Holzrichter did not bring the video recording or her report to the evidentiary hearing. Holzrichter explained she did not bring them with her because she was testifying in a civil case, not a criminal case. She noted, however, that

she did provide the report and video recording to the Kansas Department for Children and Families.

After Holzrichter testified, Mother rested. As the respondent, Father testified on his own behalf and then rested. At this point in the proceeding, Mother requested the opportunity to present rebuttal witnesses but the district court did not allow her to do so, stating that, in light of the decision it was going to make, it did not need to hear any rebuttal evidence. The district court then granted Mother's petition. After expressing reservations about whether a protection from stalking order was the proper procedural vehicle to deal with Mother's concerns, the district court advised the parties that it was referring the case to the district attorney for review under the standards governing children in need of care and that it would review the protection from stalking order in 45 days. When asked by Father's counsel, the district court clarified that it was changing the temporary protection from stalking order to a final order. But when the district court issued its final protection from stalking order, it was a boilerplate form that failed to mention the 45-day review. Accordingly, Father filed an objection to the district court's order and asked that it be changed to accurately reflect the district court's directive from the bench.

Following the February 14, 2019 evidentiary hearing, but before Father's objection could be heard, the district court unilaterally reached out to Holzrichter and requested a copy of the video recording and Holzrichter's written report from the forensic interview of L.Y. After reviewing both the video and the report ex parte, the district court sent both parties an e-mail notifying them what it had done and advising them that the matter needed to be set for a new nonevidentiary hearing because the district court was "considering modifying or canceling the stalking order." The district court then made the video and the report available so that both parties could review them before the nonevidentiary hearing.

3

At that hearing, which was held on February 27, 2019, the district court advised the parties again that, after the February 14, 2019 evidentiary hearing, it sent an ex parte communication to Holzrichter asking for the video recording and report from the forensic interview of L.Y. After conducting that ex parte investigation and reviewing the additional evidence, the district court further advised the parties "that there wasn't a basis for the issuance of the protection from stalking order." The court therefore reversed its earlier decision and vacated the protection from stalking order against Father. In support of its decision, the district court specifically said that it "found the interview with [L.Y.] to be unconvincing as to the reported abuse." The court reiterated its concern from the previous hearing that a protection from stalking proceeding was not the proper vehicle for handling a child's claims of abuse against a parent. Counsel for Mother asked the district court how its actions comported with Kansas Supreme Court Rule 601B, Canon 2, Rule 2.9(C) (2019 Kan. S. Ct. R. 447), which only allows judges to consider the evidence presented at the hearing and prohibits them from independently investigating matters. The district court responded by saying that it considered the evidence at the hearing but that it was the court's "prerogative to talk with the witness further. It was a witness that had been presented by [Mother,] Jane [Holzrichter], so [the court] did that and she, she was very cooperative in allowing me to access the documentation."

After the district court entered its order vacating the protection from stalking order, Mother filed a motion to alter or amend the judgment. In that motion, Mother argued that the district court committed judicial misconduct when it conducted its own, independent, ex parte investigation of the facts and then used that investigation to reverse its previous decision. A hearing was held on April 19, 2019, but the district court denied Mother's motion. This time, the district court supported its ruling by stating:

> "I do . . . believe that I had almost a duty, maybe a duty, certainly I felt it was important
> that I learn more about the interview that was testified to by the witness Jane Holzrichter,
> head of the Child Advocacy Center at Horizons. I contacted her, she willingly provided

4

the video. I allowed both counsel opportunity, an opportunity to look at that and so I, I believe just as I did then that there was no support for a protection from stalking order.

"Also, in general, I don't believe protection from stalking cases are the best vehicle to address these issues."

ANALYSIS

Mother argues the district court's decision to conduct its own, independent, ex parte investigation of the facts and then to use the results of that investigation to reverse its previous order constitutes judicial misconduct that requires reversal under the facts of this case. Appellate courts exercise unlimited review over claims of judicial misconduct and reviews them in light of the particular facts and circumstances surrounding the allegations. *State v. Walker*, 308 Kan. 409, 419, 421 P.3d 700 (2018). But an appellate court will only reverse the lower court if "it affirmatively appears the misconduct prejudiced the substantial rights of the complaining party. 'Mere possibility of prejudice . . . is not sufficient to overturn a verdict or judgment.'" 308 Kan. at 419. The burden is on the party alleging judicial misconduct to demonstrate the requisite level of prejudice. 308 Kan. at 419.

Here, the parties agree that the district court engaged in judicial misconduct by reversing its previous decision to enter a protection from stalking order based on the results of an independent ex parte investigation conducted by the court. Specifically, the parties stipulate that the district court violated Kansas Supreme Court Rule 601B, Canon 2, Rule 2.9(C) (2019 Kan. S. Ct. R. 448), which provides that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." The record supports the parties' stipulation; therefore, we need only decide whether it affirmatively appears that the district court's misconduct prejudiced Mother's substantial rights. See *Walker*, 308 Kan. at 419.

5

Mother argues her substantial rights were prejudiced because the district court's decision to reverse its prior decision based on its independent ex parte investigation necessarily deprived her of the right to due process. This argument has merit. As another panel of this court recently held, an improper ex parte investigation by a district court is prejudicial when it bases its ruling, even in part, on the investigation and a fact that it inferred from that investigation. See *In re Marriage of DePriest*, No. 117,682, 2018 WL 3485722, at *4 (Kan. App. 2018) (unpublished opinion). Here, the district court made a decision to grant Mother's petition for a protection from stalking order after hearing the petitioner, the respondent, and several witnesses testify. Then the district court unilaterally reached out to one of the witnesses and requested that witness provide the court with the video recording of the witness' forensic interview of the child victim. The court then made an inference after viewing the forensic interview that L.Y. was "unconvincing as to the reported abuse." Notably, the court cited no facts from the forensic interview from which it drew this inference; nor could it. This is because the court is not an expert on the subject of child abuse or on the subject of interviewing a victim of child abuse.

Just as important, the court did not schedule an evidentiary hearing so that Holzrichter could be subject to examination and cross-examination regarding the interview technique, the meaning of L.Y's behaviors and responses, and other relevant information. And that is key here. There is no dispute that the court changed its ruling as a result of inferences it made based on an ex parte independent investigation without giving Mother any notice or any opportunity to be heard on the issue. Of course, the basic elements of procedural due process are notice and an opportunity to be heard. See *In re Harrington*, 305 Kan. 643, 657, 385 P.3d 905 (2016).

We find the district court's judicial misconduct prejudiced Mother's substantial rights by depriving her of the right to procedural due process. Accordingly, we reverse the decision to vacate the protection from stalking order and remand the case with

6

directions to reinstate the February 14, 2019 protection from stalking order. Further proceedings on remand shall be assigned to a different judge.

Reversed and remanded with directions.